Case 2:15-cv-00407　Document 38　Filed in TXSD on 02/27/17　Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
February 27, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE E. KING, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:15-CV-407 |
| | § | |
| GREENE'S ENERGY GROUP, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

The Court is in receipt of Plaintiff Joe E. King's ("King") Motion for Appointment of Counsel, Dkt. No. 34. King seeks the Court to appoint counsel in the above-captioned case, in which he alleges that Defendant Greene's Energy Group, LLC ("Greene's Energy") violated Title 42 U.S.C. Section 2000e et. seq. and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 ("Title VII"), by subjecting him to discrimination based upon his race/color, and retaliating against him when he reported alleged instances of discrimination to his supervisor. *See* Compl. ¶¶ 3–22.

### I.  Background

King is an African American who worked for Greene's Energy beginning on or about February 10, 2010. King alleges that throughout his employment, he was subjected to harassment and discrimination as a result of his race/color. He alleges that in August 2014, Greene's Energy refused to allow King to take an unpaid day off despite affording other similarly situated non-African American employees unpaid days off. King allegedly reported this discriminatory treatment to his supervisor Santos Ruiz ("Ruiz"). King claims that Ruiz suspended King for a week in retaliation for alleging that he was treated differently based on his race/color. King alleges that in August 2014, he was also reprimanded for not wearing certain safety equipment while other similarly situated non-African American employees

were not reprimanded for the failure to wear safety equipment. In January 2015, King was accused of theft by his employer, and alleges that while other non-African Americans were implicated in the theft, only King was suspended without pay while Greene's Energy investigated the alleged theft. King alleges that Greene's Energy then retaliated against King by terminating him on or about February 5, 2015. *See* Compl. ¶ 3–22; *see also* EEOC Form, Dkt. No. 37 at 7. King filed suit in federal court on September 23, 2015, and was originally represented by Jennifer K. Loftin ("Loftin") and Abel Herrero ("Herrero") of Herrero & Loftin, PLLC ("Herrero & Loftin"). *See* Compl.

On March 24, 2016, Herrero & Loftin filed a motion for leave to withdraw as King's counsel of record, citing "irreconcilable differences" and an "adversarial relationship" between the firm and King. Dkt. No. 19 at 1. In an affidavit accompanying the motion for leave to withdraw, Herrero testified that on or about October 2, 2015, King independently requested a summons be issued and also independently attempted to have Greene's Energy served. Affidavit of Herrero, Dkt. No. 19-2, Ex. B at 1. Herrero and Loftin testified in their respective affidavits that there was a "lack of trust" between King and Herrero & Loftin. *See id.*; *see also* Affidavit of Loftin, Dkt. No. 19-1, Ex. A. at 2. Loftin testified, "In addition to the lack of trust and adversarial relationship, Mr. King and the Firm cannot agree on the manner in which his case should proceed such that the continued representation of Mr. King is rendered unreasonably difficult." Affidavit of Loftin, Dkt. No. 19-1, Ex. A at 1. Herrero testified that due to the lack of trust between King and Herrero & Loftin, he was "unable to communicate directly with opposing counsel" without King being present, and that this "render[ed] representation unreasonably difficult and present[ed] an unreasonable financial burden on the Firm." Affidavit of Herrero, Dkt. No. 19-2, Ex. B at 2.

On April 18, 2016, the Court held a hearing on the motion for leave to withdraw, at which Loftin, Herrero, and King appeared.  The Court heard sworn testimony from Loftin and King, and King stated that he was unopposed to Herrero

& Loftin's motion to withdraw. Based on the evidence introduced at the hearing held on April 18, 2016, this Court found that King received reasonable notice of Loftin and Herrero's motion to withdraw and that good cause existed to permit them to withdraw. Dkt. No. 23; *see also In re Wynn*, 889 F.2d 644, 646 (5th Cir. 1989) ("An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client."). After the hearing, this Court ordered King to advise the Court whether he intended to retain new counsel or appear pro se in this case. Dkt. No. 25 at 2. On July 7, 2016, this Court stayed the case to allow King to locate new counsel, and ordered King to file a status report or cause a notice of appearance to be filed by August 15, 2016. Dkt. No. 30. at 2–3.

On August 15, 2016, King filed the instant Motion for Appointment of Counsel, Dkt. No. 34. On September 6, 2016, Greene's Energy filed its response to the motion, Dkt. No. 35. On September 13, 2016, King filed a motion to extend his reply deadline by thirty (30) days, Dkt. No. 36. King stated that he does not have access to a computer, is not familiar with the law, and needs additional time to research and prepare his reply. *Id.* at 1–2. On October 12, 2016, King filed his reply in support of his Motion for Appointment of Counsel, Dkt. No. 37. Based on King's representations, the Court finds that good cause existed to extend his reply deadline and **GRANTS** his motion entered September 13, 2016, Dkt. No. 36. *See* Fed. R. Civ. P. 6(b)(1)(A). As such, King's reply, Dkt. No. 37, is timely filed.

## II. Legal Standard

Title VII provides for the appointment of an attorney for a Title VII complainant upon request "in such circumstances as the court may deem just." 42 U.S.C. § 2000e–5(f)(1); *Gonzalez v. Carlin*, 907 F.2d 573, 579 (5th Cir. 1990). "Congress specifically authorized courts to appoint counsel for Title VII complainants in suits brought under Title VII." *Id.* at 580 (citing 42 U.S.C. § 2000e–5(f)(1)). Therefore, courts "should not neglect a highly remedial provision of Title VII itself in considering whether to appoint a lawyer to represent" a Title VII plaintiff.

*Id.* at 580 (citing *Camps v. C & P Telephone Co.*, 692 F.2d 120, 126 (D.C. Cir. 1981)). However, "[t]here is no automatic right to the appointment of counsel in a Title VII case." *Id.* at 579 (citing *Caston v. Sears, Roebuck & Co., Hattiesburg, Miss.*, 556 F.2d 1305, 1309 (5th Cir. 1977)). Rather, the decision whether to appoint counsel rests within the sound discretion of the trial court. *Id.* The plaintiff has the burden of persuasion with regard to his application for an appointment of an attorney, although should not be "saddled with formalized requirements such as the filing of affidavits, statements, or structured pleadings." *Caston*, 556 F.2d at 1310. "Such technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Id.* (citing *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)).

District courts analyzing the merits of a Title VII plaintiff's request for counsel should consider: (1) the merits of the plaintiff's claims of discrimination; (2) the efforts taken by the plaintiff to obtain counsel; and (3) the plaintiff's financial ability to retain counsel. *Gonzalez*, 907 F.2d at 580 (citing *Caston*, 556 F.2d at 1309). No single factor is conclusive. *Id.*

On the first prong, in *Caston*, the Fifth Circuit held that, "[a]s the administrative agency statutorily charged with the responsibility of enforcing Title VII and presumably equipped with at least a modest amount of expertise in the area," the determination of the Employment Opportunity Commission ("EEOC") is "highly probative" insight into the likely merits of the claim for purposes of deciding whether to appoint counsel. *See Caston*, 556 F.2d at 1309. However, the Fifth Circuit held that, "[c]learly, the refusal to appoint counsel solely because the EEOC finds no reasonable cause to believe that a claim exists would be an error" and recognized that "the refusal to appoint counsel may in some circumstances effectively deny a potential plaintiff his only remedy under the law." *Id.* at 1308–09. The Fifth Circuit held that the district court may—and perhaps even should— inquire of plaintiff as to the validity of the EEOC's no reasonable cause determination and why plaintiff considers the determination to be in error. *Id.* "In

this regard, a finding that the EEOC determination is supported by substantial evidence in the investigative file and that plaintiff's objections thereto are patently frivolous would weigh heavily in the scales against appointing an attorney." *Id.*

On the second prong, the Fifth Circuit in *Caston* stated that "a person's diligence in attempting to obtain a lawyer to assist him may properly be considered by the district court in assessing the 'justness' in the application for counsel." *Id.* The Court also noted that Title VII awards the prevailing party his attorney's fees and noted that contingent fee arrangements are not uncommon in the civil rights field. However, the Fifth Circuit also noted that "we do not suggest that a plaintiff should be required to exhaust the legal directory before a court could appoint him an attorney." *Id.* On the third prong, the Fifth Circuit in *Caston* held that while the statute "does not require that one be a pauper before counsel may be appointed, a person's financial resources should certainly be considered." *Id.* at 1310.

In *Gonzalez*, the Fifth Circuit upheld the district court's denial of a plaintiff's motion to appoint counsel in a Title VII claim by holding that, on balance, the *Caston* factors weighed against the appointment of counsel. *See Gonzalez*, 907 F.2d at 580. In that case, the district court properly "referr[ed] to the EEOC proceeding that resulted in a rejection of Gonzales's claims of discrimination and retaliation." *Id.* The Fifth Circuit held that the second *Caston* factor may arguably have been satisfied because Gonzalez stated in his motion that he had unsuccessfully contacted five attorneys and therefore "an appointment of counsel would not have been rewarding Gonzalez for his own lack of diligence." *Id.* For the third prong, Gonzalez was "under no constraint which would inhibit his opportunity to investigate the cause" because he was still employed and his take-home salary was $1,650 per month. *Id.*

A pro se litigant's briefs are afforded liberal construction. *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). The rationale here is that it "would be inequitable" to hold pro se litigants to strict procedural standards and thereby punish such litigants "for

lacking the linguistic and analytical skills of a trained lawyer." *Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002). District courts should be sensitive to the problems faced by pro se litigants and innovative in their responses to them. *Caston*, 556 F.2d at 1310. Nonetheless, courts "still require pro se parties to fundamentally 'abide by the rules that govern the federal courts.' " *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (citing *Frazier v. Wells Fargo Bank, N.A.*, 541 Fed. App'x. 419, 421 (5th Cir. 2013)). The Fifth Circuit has held that pro se litigants must, for example, properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal. *Id.* at 464.

## III. Analysis

The Court proceeds by analyzing King's Motion for Appointment of Counsel under the three-part *Caston* factors. *See Gonzalez*, 907 F.2d at 580; *Caston*, 556 F.2d at 1309.

### A. <u>Merits of King's Claims of Discrimination</u>

Plaintiff represents that he believes his case to have merit under federal law. Dkt. No. 34 at 1. In its response, Greene's Energy notes that the EEOC dismissed Plaintiff's charge of employment discrimination against Greene's Energy.

In a letter dated June 4, 2015 and signed by an EEOC Federal Investigator, the EEOC provided:

> Our review of your charge at this point indicates that it is unlikely that further investigation will establish a violation of the laws we enforce. The available information does not support a conclusion that your race (black), color and/or retaliation were factors in the alleged adverse employment action you experienced.

EEOC Letter, Dkt. No. 35, Ex. B.

The letter details findings from the EEOC investigation, including that while King received "generally good marks on appraisals," King received a warning for

violating company rules and a write-up for insubordination, failure to follow instructions, violation of safety rules, and violation of company rules in August 2011. Dkt. No. 35, Ex. B at 1. The letter also states that according to Greene's Energy, King resisted a dispatch in June 2013 and was unable to account for charges on the company credit card for various purchases of unleaded fuel[1] between September 3, 2014 and January 30, 2015, for which Greene's Energy filed charges with the Jim Wells County Sheriff's Office ("Sheriff's Office"). Dkt. No. 35, Ex. B at 2. The EEOC investigator stated that "it appears [Greene's Energy] had a valid non-discriminatory reason for termination," and provided King until June 14, 2015 to furnish additional evidence warranting additional investigation of his discrimination claims. *Id.* at 2. There is no evidence in the record to suggest that King submitted further evidence to the EEOC to prompt additional investigation of his discrimination claims.

On June 25, 2015, the EEOC issued its determination regarding King's Title VII claim, which stated:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

EEOC Dismissal and Notice of Rights ("EEOC Dismissal"), Dkt. No. 35, Ex. A.

In his reply brief, King states that a finding of non-discrimination against him is erroneous, arbitrary, and against the law because he was not allowed to take unpaid leave despite Greene's Energy affording days off to other similarly situated non-African American employees. Dkt. No. 37 at 2. King reiterates his allegations as set out in the initial complaint. Additionally, he attaches as an exhibit the Sheriff's Office Investigative Case Log ("Sheriff's Office Case Log") in support of his position that no formal charges were filed against him. *See* Sheriff's Office Case

---

[1] The letter explains that Greene's Energy contended that they only use diesel fuel. Dkt. No. 35, Ex. B at 2.

Log, Dkt. No 37 at 12 ("As of [M]arch 16, 2014[,] there are no further leads. If more information becomes available[,] this case will be reopened."). In his reply brief, King also points out that on March 11, 2015, the Texas Workforce Commission ("TWC") made a determination granting King unemployment benefits because its investigation found that he was terminated for reasons apart from misconduct. Dkt. No. 37 at 3. King attaches as an exhibit the TWC Determination on Payment of Unemployment Benefits. *See* TWC Determination, Dkt. No. 37 at 13 ("Our investigation found that your employer fired you for a reason that was not misconduct connected with the work."). Plaintiff argues that the Sheriff's Office Case Log and TWC determination support his claim that he was wrongfully terminated based on his race and color, rather than due to misconduct, as Greene's Energy argues. *Id.*

To prevail on prong one of the *Caston* factors, King would need to provide evidence sufficient to outweigh the "highly probative" nature of the EEOC determination. *See Caston*, 556 F.2d at 1309. The EEOC investigation found that King was terminated after a series of incidents including a warning for violating company rules, write-up for insubordination, failure to follow instructions, violation of safety rules, violation of company rules, and resisting a dispatch. *See* EEOC Letter, Dkt. No. 35, Ex. B at 1. The legal conclusions contained in the Sheriff's Office Case Log and the TWC determination are not sufficient to persuade the Court that the EEOC did not have "substantial evidence," *see Caston*, 556 F.2d at 1309, in its investigative findings and determination that King's adverse employment action was due to valid non-discriminatory reasons. Additionally, the Court does not have before it the type or quality of evidence that the TWC considered when it determined that King was terminated for "a reason that was not misconduct connected with the work." *See* TWC Determination, Dkt. No. 37 at 13. In sum, this Court finds that the EEOC determination is supported by substantial evidence. *See Caston*, 556 F.2d at 1309.

B.  Efforts Taken by King to Obtain Counsel

On the second *Caston* factor, King represents that he has tried to the best of his abilities to retain counsel but has failed to retain representation. Dkt. No. 34 at 1. Although King did have counsel at the outset of his civil suit, as a result of his own actions, that representation ceased on April 18, 2016, as discussed in Section I, *supra*.

Since then, King has claimed that he has found it "unreasonably difficult" to retain counsel. *Id*. King attaches a letter from Thomas J. Henry ("Henry") dated September 28, 2016, which indicates that Henry handles personal injury suits. Dkt. No. 37 at 15. King also states that he has tried to retain Tanning Law Firm,[2] Hector Gonzale[z], Burke's Law Firm,[3] and Ste[ph]en Chapman ("Chapman"),[4] but indicates that "they have all refuse[d] to represent me." Dkt. No. 34 at 1.

Despite his statement that Chapman has refused to represent him, *see id.*, King nevertheless attaches the first page of what is titled "Contingent Fee Agreement" between King and Chapman Law Firm. *See* Dkt. No. 37 at 16. The agreement states:

> This Contract is between Joe King, and the Chapman Law Firm of Corpus Christi, Texas, Attorney . . . . Client hereby employs said attorney and authorizes and empowers them to institute, maintain and prosecute the following claim:
>
> Wrongful Termination/Discrimination – Against Greene's Energy Group.
>
> Said attorney is hereby appointed agent and attorney-in fact to execute in the name of and on behalf of the Client all necessary releases, receipts, settlements, discharges, judgments or recoveries of whatever nature, and generally do all things which in his judgment are requisite to the handling of this matter.

Contingent Fee Agreement, Dkt. No. 37 at 16.

---

[2] The Court notes that King may be referring to William J. Tinning, P.C.
[3] The Court notes that King may be referring to Burkett Law Firm.
[4] Stephen Chapman operates the Chapman Law Firm out of Corpus Christi, Texas. *See* Find a Lawyer, STATE BAR OF TEXAS, https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirectory/MemberDirectoryDetail.cfm&ContactID=196631.

The agreement provides that in consideration of the services rendered, the Client agrees to an undivided forty percent (40%) interest in the case should the case be filed in court. The agreement states that if the case is resolved prior to filing, the Client agrees to convey to the attorney an undivided third (33-1/3%) interest in the case. *Id*. Finally, "[i]n the event no recovery is had, no content attorneys' fees shall be due." *Id*. The exhibit does not state on what date, if at all, the Contingent Fee Agreement was executed because King filed only the first page of the agreement.

Although King claims Chapman refused to represent him, the language of the Contingent Fee Agreement exhibit implies otherwise. The document specifically names King and the Chapman Law Firm and specifies that the contract is to prosecute the claim of "Wrongful Termination/Discrimination – Against Greene's Energy Group." The Court is unable to ascertain whether King or Chapman signed the Contingent Fee Agreement, but the exhibit certainly appears to contradict King's assertion that Chapman refused to represent him, especially because it names with particularity the parties to the instant suit. King has not provided an explanation for this inconsistency. The Court thus finds that King has not met his burden of persuasion regarding his efforts to obtain counsel. *See Caston*, 556 F.2d at 1310.

    C.    <u>King's Financial Ability to Retain Counsel</u>

King represents that he has "no funds" and is currently "disable[d]" with "no way of obtaining substit[ution] of counsel." Dkt. No. 34 at 1. Greene's Energy does not dispute this contention. The Court recognizes that the King is not to be "saddled with formalized requirements" such as the filing of affidavits or other statements as to his current income. *See Caston*, 556 F.2d at 1310. Therefore, on the third *Caston* prong, the Court finds that King has demonstrated that he has financial constraints which may inhibit his opportunity to investigate his Title VII claim. *See Gonzalez*, 907 F.2d at 580.

### IV.     Conclusion

Taking into account the Fifth Circuit case law and weighing the *Caston* factors, this Court holds that, on balance, the *Caston* factors weigh against the appointment of counsel for King.

The Court thus **DENIES** King's Motion for Appointment of Counsel, Dkt. No. 34. The Court **ORDERS** that King has until and including **March 24, 2017** in which to cause a notice of appearance to be filed by retained counsel, or to otherwise update the Court if he intends to proceed pro se.

The Court **GRANTS** King's September 13, 2016 motion to extend time to file his reply brief, Dkt. No. 36, and thus finds that his October 12, 2016, reply brief, Dkt. No. 37, was timely filed.

The Court also **DIRECTS** the Clerk of the Court to send this Order via certified mail to Joe E. King at the address on file with the Court.

SIGNED this 27th day of February, 2017.

_____
Hilda Tagle
Senior United States District Judge